Our fourth case this morning is 18-2168 United States v. Gonzalez-Fierro. Mr. Pori. Thank you. May it please the Court. Mr. Messick. Judge, I've stopped. How many signatories were there on the declaration? I thought it was 28, but I'm sure my clerk will figure it out. Thank you. I appreciate that. Your Honor, we do submit that the District Court erred in summarily denying Mr. Marquez's motion challenging a prior order of removal because that prior order was entered after an expedited removal proceeding, which we contend is fundamentally unfair. We submit that the proceeding that's led to Mr. Marquez's removal could not be, did not support with requirements of fundamental fairness and due process. Indeed, we submit that no part of the 2009 expedited removal proceeding was fair. At that time, a then 17-year-old Mr. Marquez was apprehended a mile north of the U.S.-Mexico border as he was attempting to reenter this country and return to his home here in Santa Fe, alone, in custody, and without an attorney, a 17-year-old Mr. Marquez. You say, you say 17, but then there was other evidence that he was 19, almost 20. So has there been any finding of fact on that? Yes, Your Honor. There are two, the best finding is that during the sensing hearing, and we attached the sensing hearing transcript, because when we talked, when we went to sensing, we noted to Judge that the pre-sentence report contained Mr. Marquez's true name, Martin Marquez, and his true date of birth, and the true date of birth we have established that in 2009, he was 17 years old. There was also the age listed on the criminal complaint. So the record contains two discrete instances where it's clear. My question wasn't what the record contained, my question, I said that the record really reflects two different ages. My question was, was there a finding of fact on that? And you said, yes, sir, and then you gave me an answer that didn't support it. Was there a finding of fact acknowledging a dispute about his age and saying, I know that there's two different ages here on the record, and I am finding this is the right age and that's the wrong age. Was there anything like that? Well, there was something like that, and what you're speaking to, Judge, is the problem in the district court summarily denied the motion and made conclusions about Mr. Marquez's age based on representations in the removal proceedings, which are at odds with the evidence in the record. So the finding of fact was against you. Yes, sir. The finding of fact then is that he was 19. That's right. All right, so the answer is yes, there was a finding of fact, yes, it is 19, that's contrary to our argument that he's a minor, and his prejudice was that he should have been treated deferentially as a minor. And the only thing I would add is it's contrary not to our argument, but it's contrary to evidence in the record. So that the finding of fact was based on a representation that was, the court adopted without a hearing, even though there was record evidence at the time the court entered that And at the time, ultimately, the court sentenced Mr. Marquez that the district court's factual finding was in error. And that's one of the reasons why we claim that it would have been much more prudent for the district court to consider this claim after a full-blown evidentiary hearing. Well, you know, this is all very interesting. I'm so fundamentally befuddled, I don't even know your client's name. His name is Martin Marquez Rico. So where does this, but on the docket, it says that it's Vieiro. Mr. Marquez, when he was 17 years old and came into immigration custody, used a false name and a false date of birth. And throughout our proceedings in the district court, we attempted to emphasize to the district court, you're calling him Rodolfo Gonzalez Vieiro, that is not his name. We'd asked the court to amend the pleading to reflect his true legal name. The court, throughout the proceedings, said, well, we will note that the AKA is on file. It's Mr. Marquez Rico. And we don't, they didn't really take that extra step of saying, who is this man and how old is he? An evidentiary hearing would have answered both of those questions. The absence of an evidentiary hearing leaves us where we find ourselves today. Well, how would the outcome, how would the outcome have been different if he were 17 instead of 19? I think the outcome would have been different for a variety of reasons. Number one, as the government plainly notes, he wouldn't have been subject to this expedited removal order at all. We wouldn't be talking about an expedited removal order. And in fact, we wouldn't be talking about a criminal complaint because he would not have been removed by a prior order. So it's fundamental. He still could have been removed, right? He could have been. Regardless of his age. He could have been removed, but there would not have been a removal order. Could he have appealed the order of expedited removal? He cannot appeal an order of expedited removal, whether you're 17 or 19 or 99. But if you're 17, what we really focused on was not just that the expedited removal proceedings were inappropriate because he wasn't subject to that at his age. That's something that the government noted in their answer brief. What we emphasized is you have a 17-year-old arrested at night, alone, and he's offered an easy choice and a hard choice. Well, anyone who's ever had a 17-year-old is going to be able to answer that question. Is he going to take the easy way or the hard way? And when you style it as, well, you can be removed tonight. You'll go back to Mexico tonight. You'll be returned home tonight and we'll be done. That was what was essentially offered to him in the waiver that induced his willingness to accept the expedited removal order. He wasn't coerced to lie about his age, was he? He was not coerced to lie about his age. He voluntarily claimed he was 19. I'm not saying he's not a knucklehead, Judge. We wouldn't be here if he was a rocket scientist. I don't know why that makes it an easier or hard choice. Well, no, it's just, I mean, we are here arguing the finer points of a broken immigration system, which everyone in this court... Well, before we get to the fine points, let's get to the gross points. Was there any explanation as to why he lied about his age, about his name and age? There is nothing in the record to indicate why he made such a foolish choice and profoundly disadvantaged himself, not just in that proceeding, but in this proceeding. There's no explanation for why that happened. And in our brief, we ask, you know, at that time, immigration was required to segregate minors from adults. And was there any kind of age verification process used? We simply don't know. But what we do know... Well, you don't fault the Immigration Service for not treating him as a minor, do you? No, I fault the Immigration Service. What is the legal argument that you make that it flows as a consequence of the fact that he's 17? And what do you want us to do about it? The legal argument that I make is that this prior order of expedited removal was fundamentally unfair because it was induced by a promise, which to a 17-year-old... But that is past tense, right? It's happened. It's past tense, and yet it forms an essential element of the offense that we're arguing about today. And if that essential element, that prior order, is fundamentally unfair, it was entered in violation of due process... So you want us to purge it somehow? I don't want you to purge it. I want you to dismiss this case. I want the court to finally say, look, this is unfair. Whether you're 17 or 19, let's just look at the... Even setting aside his age, Judge, you said... What you want us to do is to keep him in the United States? That you cannot do because you would have to then... This conviction was... Right. So I get to my question. What relief do you ask of us? To set aside the conviction because it relies on an element that was previously removed. That element... Where is he now? He is in Mexico. So you just want this to clear the record, so to speak? I would like... Yes. Why isn't it moved? It's not moved because if his conviction is vacated, then he may be eligible to apply for lawful status. If he marshals the resources of an immigration lawyer and is able to show that both his prior conviction was vacated, because the order upon which it is predicated is fundamentally unfair, that's what we're talking about here today. When did he first set foot in the United States? 12 years old. When he was 12? Yes, sir. And what proof is there of that? It's just his relation and his explanation to the Border Patrol agent. He said, I'm returning home. We're talking about 2009 at the Border Patrol station at night. He says, I'm returning home to my family in Santa Fe. My mother, my sister, they lived there. We came here when I was 12. I returned to Mexico to visit relatives, and then you caught me. And then he was caught up in a proceeding which this court has to decide, which to take up the mantle that the district court shunned. And that is, is that prior order of expedited removal fundamentally unfair? And said... Well, wait a second. Fundamentally unfair. Well, you know, maybe it's unfair. Maybe it's not. Maybe it's just not really nice. Maybe it's... I mean, what's the law? The law is... Give us some law. Why is it illegal? Why does... I mean, what is... It is unfair because in order to accept an order of expedited removal, the person must make a knowing, intelligent, and voluntary decision based on a full understanding as to its meaning and effect. Nothing even remotely close to that is apparent on this record. 17 or 77. What case do you say authorizes us to do what you want us to do? Mendoza-Lopez. Mendoza-Lopez says if you're going to come into court and you're going to be waving around an order of expedited removal, and you're going to put someone in jail, and you're going to make sure that they never come back to this country, make sure that that order that you have in your hand was entered in accordance with the fundamental principles of due process. And when you look at this order, no such finding can be made. That was the district court's error. The district court didn't even give him a hearing to make that finding. And yet every aspect of that decision is flawed. It's flawed because that prior order couldn't have even applied to him had they known his true age. Irrespective of his age, it was coerced by this easy choice, hard choice dichotomy saying, accept expedited removal, go home tonight. Try to fight your case. Well, we're going to put you in custody. We'll get you a lawyer. We don't know when we'll get to you. That's exactly how it was framed to Mr. Marquez. And that is not the way it should be framed to anyone, especially if they relinquish their rights to live in this country. When did your client first alert the government that he was a minor and was making the argument that the expedited order of removal was unfair? When we filed our motion. Because of course, as you know from the briefing, once that expedited order is entered, you can't take judicial appeal. It can't be reviewed. The only time it's ever going to be reviewed is if you have that order in your hand, you're trying to put him in jail again for illegal reentry. And that is the time when it should have been reviewed. That's what 1326. I'm trying to figure out where, where was, where was the failure of due process where, where was there a malfunction of the removal process? It started in 2009, was an expedited removal order. But it was based upon his deception, his own deception. You've told us immigration had no way of knowing that this kid that you claim was a 17 year old kid was actually not 19, which he claimed to be. And if that was my only argument, it would be a weak argument, Judge Estera, but that's not my only argument. That part of the argument is, well, I'm, I'm just trying to get an answer to Judge Dipkevich's question. I'm trying to give you one. It was induced by a choice, which was no choice at all, whether the person was 17 or 77. How do we know? How do we know it was induced? I'm sorry? How do we know? I don't see any evidence of coercion or inducement. Where do we, where do we get there? Because we have to get there to make a finding of unfairness. We made a motion and in the motion we recited in detail exactly how that order was entered. And we recited it in detail because we reviewed the A file, the immigration file, that showed the circumstances under which it was entered and the advisement of rights that was given. The advisement of rights was in Spanish. And the advisement of rights said, you can agree to be removed today and you'll go home today or you can try to fight it and you'll stay in custody and you'll have to get out. Those are true statements. Yes. Those are true statements. Those are. That's the law. Sometimes things are harsh and people have uncomfortable decisions or even make decisions they don't like because there aren't good choices. That's absolutely true. And if you tell the people the consequences of those choices. You don't tell them you got problems. And they didn't. Mr. Poirier, what if your client had told immigration, I'm 17, what would have happened? They would have said, we're going to remove you without entering an order. And if he came back, he would not be subject to illegal reentry. They would not have been able to go down the path of expedited removal, right? That's right. So there's a problem right there. But that's his problem because he lied and he put himself in that unique position. You know, the bad consequences that flow from the lie, it wouldn't have occurred if he'd been honest. Sure. But it's also the bad consequences that flow from the advisement. Because when you tell someone, you should get out or stay in. I know. He would not have been advised in that fashion if he'd been truthful. That's right. But he was advised in that fashion and he exercised a choice, a choice which was not known, intelligent, and voluntary. Well, let me ask you this. In response to Judge Timkiewicz's earlier question, there's been a lot of questions that I think are really good and a lot of answers that I don't understand. He said, why isn't this case moved? Why shouldn't we just dismiss this case? And if your client ever presents himself for reentry, why aren't all of these arguments best reserved for that time? Because this, and I see my time is expiring. Go ahead and answer his question. This case will continue to affect Mr. Marcus for the rest of his life if he should make any attempt to reenter this country lawfully or unlawfully. Well, I just asked you, why couldn't we dismiss this case without prejudice to his raising the issue again if he ever presents himself legally at the border and says, I want to come back? And I'm sorry, I may not understand your question. If the case is dismissed and the conviction is vacated, you can do that, and that would be fine. And it wouldn't hurt his future immigration chances. If the appeal is dismissed and the conviction is extant, and that extant conviction relies on a prior order, which is fundamentally unfair, then it will continue to affect him. Your time is up. And it's best for you and mine not to push time beyond your limits. Thank you. Okay. Thank you, counsel. Let's hear from the government. Good morning, and may it please the court, counsel, Paige Messick for the United States. Your honors, there are some thorns in this case, but there is at least one clear path through the briar patch. And that is the district court did not abuse its discretion, plainly or otherwise, in deciding Gonzalez-Firo's motion to dismiss without a hearing. His entire argument hinges upon this factual finding that he thinks he could have gotten if the district court had held the hearing that he didn't ask for. Just to briefly recap, his motion to dismiss didn't present any factual dispute at all. Not a hint of one. He just says, I was 17 at the time of my expedited removal in 2009. He doesn't acknowledge that he once said in that very proceeding under oath that he was 19 years old at the time. So the government responds and says, well, actually he swore that he was 19 to the border patrol and the government attaches that sworn declaration. He then says in a reply, in a footnote to his reply, well, I lied about my age. But he doesn't attach any documents to support what he's now saying his age was. He doesn't say, I've got testimony I would like to present about this. He doesn't even respond to the government's explicit contention in its response that no hearing was necessary. So then the memorandum opinion and order comes out, deciding the motion on the, on the pleadings. And he doesn't say, wait, Judge Herrera, I had evidence I wanted to present here. He doesn't do anything. And this is a particularly important issue to raise in the district court because it's so easy for the district court to address it right there. If there were facts that he wanted to put out that would have swayed the court's determination in his favor, then he could have asked for that hearing then, could have had it, we wouldn't have this issue on appeal at all. We should never be hearing for the first time on appeal that a hearing is necessary to resolve disputed facts. Nor could it be plain for the district court to have resolved the motion in this way. District courts have a lot of discretion in how to resolve motions. There are no cases, as Gonzales-Ferro acknowledges, that hold that an evidentiary hearing is always required in a 1326D motion, even in a motion to dismiss. To the contrary, in a post-conviction case, this court has held that with regard to that other type of collateral attack, the district court is not required to hold a hearing without a firm idea of what will be presented at that hearing. That firm idea was entirely absent below, and it's still absent here on appeal. Now, there is, of course, another way to resolve this case without proceeding down any path at all, and that is for the court to decline to undertake the plain error review. The court has discretion to undertake that review. Absolutely, it does, but it shouldn't exercise that discretion in this case to overlook the failure to argue for plain error review in the opening brief. The court has exercised that discretion in some previous cases, such as Courtney, where he has said, it appears that the failure to argue plain error in the opening brief was just an oversight or a mistake that was promptly corrected. But here, it couldn't have been an oversight or a mistake. Gonzales-Fiero is represented by an office that has substantial appellate experience, and it's simply not possible to write a brief contending that a statute cited nowhere below is unconstitutional without realizing that something is new here. And if an appellant can obtain a better standard ... Counsel, has anybody made a determination of what this gentleman's name is? No, Your Honor. It's quite evident. You call him Fiero, and he calls him by another name, and he says his name is right, and you obviously must think he's not telling the truth, because you pursued to use your name. I don't know what his true name is, because I haven't seen his birth certificate. I'm going with the name under which we charged the case, which is the name that appeared in his immigration records. If he has evidence that his true name is otherwise ... So if a Mr. Martine shows up and presents himself, there's not going to be anything in the record that even ties this name, or this case, to his new case? There will be, Your Honor, because I believe all of those records are linked in ICE databases by aliases, but also ... Where did the AKA come up from in the first place, from you or the court? I don't know where the AKA came from. I think that he is the one that said to the court, this is my true legal name. Well, he was removed at age nine, or he entered at age nine. What name did he use then? We don't have any evidence of his entry at age nine. Okay. I thought I heard Mr. Pori say that. I think what Mr. Pori said was that the evidence he had been here since he was nine, or whatever, was in his own sworn statement to Border Patrol in 2009, the same sworn statement he wants the district court to have disregarded when it pertains to his age, by the way. I don't recall that he went through his whole life story in there. I thought it was a little bit more abbreviated that he was just visiting his mother in Santa Fe. But in any case, I don't believe that those facts are relevant to how the court would resolve this dispute. I'm setting aside the evidentiary hearing. Is the jurisdictional question, is that also a plain error review? Yes. The jurisdictional question is absolutely under plain error review. The challenge to the constitutionality of 1225B1D was never raised below. Terms that you will not find anywhere in the district court record include unconstitutional, jurisdiction stripping, or 1225B1D itself. Nothing, he said below, gave the district court fair notice that he was challenging the constitutionality of this jurisdiction stripping provision, or any other jurisdiction stripping provision. Well, how clear is Mendoza-Lopez? I mean, we do have a Ninth Circuit case, don't we, that goes his way? Yes, there is one circuit that goes his way, but the Tenth Circuit has never ruled on it. The Supreme Court has never ruled on it, unless the Ninth Circuit has. What about other circuits? The Ninth Circuit is the only one, so it would have to be a consensus of one. The Fifth Circuit, I believe he said somewhere in his brief that there were two circuits, and then he cites the Fifth Circuit's Lopez-Vazquez case as one of them. Lopez-Vazquez certainly did not hold that 1225B1D is unconstitutional. It explicitly avoided that question. So he's got one case, and that's the Ninth Circuit case. As to Mendoza-Lopez itself, Mendoza-Lopez arose in the context of two defendant aliens who were apprehended in Nebraska, and thereafter subject to formal deportation proceedings. Those are aliens who, it is undisputed, had due process rights before they could be removed from the country, and the government in Mendoza-Lopez conceded that those rights had been violated when the aliens were removed without the opportunity for judicial review. So the Supreme Court said, if you've denied review there, and you're not going to afford it here, then you cannot use the result of that prior administrative proceeding as an element in a criminal offense. But it did not say that you have to give that same array of procedural rights to people who are in the class of arriving aliens. And it did not say that you have to afford arriving aliens judicial review at a later date of an expedited removal before it could be used. Well, it didn't, because that issue wasn't before it. But why shouldn't arriving aliens have that same right to challenge the constitutionality of the underpinning action, which is resulting in their current criminal conviction? Because arriving aliens, in a separate line of cases, the Supreme Court has made it clear that arriving aliens have few or no due process protections in their removal proceedings. And so to allow them to bring a claim that the proceeding was fundamentally unfair is asking a question about due process in a proceeding that is not subject to due process because of the status of the alien there. So Mendoza-Lopez, in essence, says that you can't use the result of a fundamentally unfair proceeding in a subsequent criminal prosecution where there's been no additional opportunity for review. What is your view on whether this case is moot? The case is not moot, but it is this close to being moot. The reason it is not moot is the Sandoval Enrique case by Judge Ebell, in which we had a similar defendant who had already been deported and fully served his sentence. The court held that that case was not moot because the challenge to his conviction was a collateral consequences doctrine. Because there could be a collateral consequence in that 10 years or so down the line when that removal bar is no longer present, he might be denied discretionary review based on the existence of this conviction. So what you're saying is that but for our brother Ebell, we could declare this case moot and dismiss it? That's what I'm saying, Your Honor. But you do have that case, so it seems like it's not that close to being moot. It's not close at all to being moot. Well, I would say that it is a very distant collateral consequence. And so- But no more distant than the other case that I had. Way more distant than the other case that you had. I think that these are essentially the same. Sandoval and Riquet in this case are in the same position with regarding mootness. I may be a little hard for me to speak about Sandoval and Riquet because I argued in that case that it was moot. But I accept the court's decision there, but that is a far off collateral consequence, but it does under the court's case prevent the case from being moot. But it's still something that is out there. This is not a man who's sitting in prison right now on this conviction. And that is a reason that I would suggest to the court that this is a good case to use to send the message that you can't manipulate plain error by strategically failing to argue it in your opening brief, hoping the government doesn't notice and that we waive the waiver and that you win a better standard of review by your own failure to comply with 10th Circuit rules. Because this case doesn't involve any plain error and because the consequences of this conviction to Gonzalez-Ferrer are so slight at this stage, this is a good case to send that message. I wouldn't be asking the court to go that direction if the government thought that there was indeed any plain error here. I see that I have a bit of time, but if the court has no further questions, I'm happy to return that to the court. All right. We'll take you up on the offer. Thank you, counsel. I think time has expired for Mr. Pori. So counsel are excused. I think we understand your arguments and the case shall be submitted.